ATTORNEYS FOR APPELLANTS
Irwin B. Levin
Scott D. Gilchrist
Eric S. Pavlack
Indianapolis, Indiana

James Keller
Indianapolis, Indiana

James H. Young
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Karl L. Mulvaney
Nana Quay-Smith
Candace L. Sage
Indianapolis, Indiana

Brent W. Huber
Robert L. Gauss
Brian J. Paul
Indianapolis, Indiana

ATTORNEYS FOR AMICI CURIAE
INDIANA INSURANCE INSTITUTE,
PROPERTY AND CASUALTY INSURERS
ASSOCIATION OF AMERICA,
NATIONAL ASSOCIATION OF MUTUAL
INSURANCE COMPANIES, AND
AMERICAN INSURANCE ASSOCIATION
Robert B. Clemens
George T. Patton, Jr.
Kathleen I. Hart
Indianapolis, Indiana

_____

# In the
# Indiana Supreme Court

_____

No. 49S02-0501-CV-3

CHRISTINA M. ALLGOOD, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED,

*Appellants (Plaintiffs below),*

v.

MERIDIAN SECURITY INSURANCE COMPANY,

*Appellee (Defendant below).*

_____

Appeal from the Marion Superior Court, No. 49D10-0301-PL-171
The Honorable David Dreyer, Judge

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 49A02-0307-CV-580

_____

**Boehm, Justice.**

We hold that an insurance policy that provides coverage for loss limited to the lesser of the actual cash value or the amount necessary to repair or replace the property with other property of like kind and quality does not obligate the insurer to compensate for diminution in value of the property after adequate repairs have been made.

### Factual and Procedural Background

Cynthia Allgood's automobile was damaged while insured by Meridian Security Insurance Company. The record does not reveal the cause of the damage, but Meridian paid the cost of repairs to Allgood's vehicle under its collision coverage. Meridian did not compensate Allgood for any diminution in value of the repaired car as a result of its having been damaged. Allgood initiated a class action seeking damages and a declaration that diminution in value was compensable under the collision coverage of Meridian's automobile policy.[1]

Meridian moved to dismiss or for judgment on the pleadings on the ground that the policy provided for costs of repair or replacement of the car but not for reimbursement of any decline in its value. Allgood responded with a motion for partial summary judgment, asking the court to hold that Meridian was obligated to pay for diminution in value of a damaged vehicle in addition to paying for its repair.

The trial court found that Allgood's policy "is not ambiguous, and diminished value is not included as a 'loss.'" Accordingly, the trial court dismissed Allgood's complaint for failure to state a claim and denied her motion for partial summary judgment. The Court of Appeals reversed, concluding that the policy required payment for diminished value. Allgood v. Meridian Sec. Ins. Co., 807 N.E.2d 131 (Ind. Ct. App. 2004). The Court of Appeals reaffirmed that deci-

---

[1] This suit was originally filed in Marion Superior Court as a class action by other named plaintiffs against Allstate Property & Casualty and State Farm Mutual Automobile Insurance Company. Two weeks later, Allgood joined as a plaintiff, adding Meridian as a defendant and seeking to expand the class to include herself and all other insureds of Meridian. Twenty days later, State Farm removed the entire case to federal district court. The claim against State Farm remained in federal court, but the claims against Allstate and Meridian were remanded to state court. Subsequently, the claim against Allstate was again removed to federal court, and only Allgood's case remained in state court.

sion in all respects in Allgood v. Meridian Sec. Ins. Co., 812 N.E.2d 1065 (Ind. Ct. App. 2004). This Court granted transfer. Allgood v. Meridian Sec. Ins. Co., 831 N.E.2d 733 (Ind. 2005).

## Liability for Diminution in Value

Allgood argues that Meridian's agreement to indemnify her for her loss was an agreement to make her whole. Otherwise stated, she contends that unless a repair will restore the fair market value of the vehicle to its pre-crash level, Meridian is obligated to pay for the decline in market value after the repair to fully indemnify her loss.

Allgood is correct that under common law tort doctrines, the measure of damages recoverable from a tortfeasor is generally adequate compensation for the loss sustained. She is also correct that under Indiana law that measure of damages includes diminution in value. Dado v. Jeeninga, 743 N.E.2d 291, 294-95 (Ind. Ct. App. 2001); Wiese-GMC, Inc. v. Wells, 626 N.E.2d 595, 598 (Ind. Ct. App. 1993), trans. denied; Restatement (Second) of Torts § 928 (1977). But tort doctrines are not relevant here. Making a party "whole" is the province of tort law, but has no application here. See Greg Allen Constr. Co., Inc. v. Estelle, 798 N.E.2d 171, 175 (Ind. 2003); W. Prosser, The Law of Torts § 2, at 7 (4th ed. 1971). Allgood's claim is based solely on her policy, so her claim depends entirely on the terms of the contract. An insurance company's obligation to indemnify requires it to restore the insured to the same position as before the event only to the extent required by the policy terms. See O'Brien v. Progressive N. Ins. Co., 785 A.2d 281, 291 (Del. 2001); Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 161 (Tex. 2003). Because Allgood's contention presents an issue of interpretation of the policy, it presents a question of law, and it is one of first impression in Indiana.

Allgood's automobile policy provides the following "Coverage for Damage to [an Insured's] Auto": "We will pay for direct and accidental loss to 'your covered auto' or any 'non-owned auto,' including their equipment, minus any applicable deductible shown in the Declarations." Allgood argues that this "Coverage" agreement by Meridian to pay for "direct and accidental loss" to her vehicle unambiguously includes compensation for diminution in value her car suffered when it was damaged even though it was repaired. Alternatively, she contends that she is entitled to reimbursement for her "loss," and points out that "loss" is not defined in the policy and the common dictionary definitions of the term are not helpful. She cites a variety of deci-

3

sions from other jurisdictions interpreting policies similar or identical to hers. These decisions are divided as to whether coverage for "loss" includes diminution of value, so she argues the term is ambiguous and therefore must be construed in her favor. Meridian responds that the policy includes a "Limit of Liability" provision, which reads:

A. Our limit of liability for loss will be the lesser of the:
   1. Actual cash value of the stolen or damaged property; or
   2. Amount necessary to repair or replace the property with other property of like kind and quality.
B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.
C. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

Meridian argues that this provision is unambiguous and eliminates any claim for compensation for diminution in value.

The usual principles of policy construction apply here. "Contracts for insurance are subject to the same rules of interpretation as are other contracts." Allstate Ins. Co. v. Dana Corp., 759 N.E.2d 1049, 1054 (Ind. 2001) (quoting Eli Lilly & Co. v. Home Ins. Co., 482 N.E.2d 467, 470 (Ind. 1985)). "Policy terms are interpreted from the perspective of an ordinary policyholder of average intelligence," and if reasonably intelligent persons may honestly differ as to the meaning of the policy language, the policy is ambiguous. Burkett v. Am. Family Ins. Group, 737 N.E.2d 447, 452 (Ind. Ct. App. 2000). Ambiguities are construed strictly against the insurer to further the general purpose of the insurance contract to provide coverage. Bosecker v. Westfield Ins. Co., 724 N.E.2d 241, 244 (Ind. 2000). Interpretation of the contract should harmonize its provisions, rather than place the provisions in conflict. Whitaker v. Brunner, 814 N.E.2d 288, 294 (Ind. Ct. App. 2004), trans. denied. Terms are to be given their ordinary and generally accepted meaning. Am. States Ins. Co. v. Kiger, 662 N.E.2d 945, 947 (Ind. 1996).

Meridian contends that whatever "loss" means, the Limit of Liability provision gives it the choice to pay the insured either the actual cash value of the vehicle or the costs associated with repairing or replacing the vehicle with "property of like kind and quality." For a vehicle that is a total wreck, the replacement may be less than cost of repair. In this case, Meridian chose to repair Allgood's vehicle. Allgood does not dispute that her vehicle was adequately re-

4

stored to its preaccident level of performance and function. Allgood argues that Meridian could have written the contract to exclude coverage for diminution in value. She contends that without any explicit mention of diminished value the Limit of Liability is ambiguous. Thus, even if the Limit of Liability applies, she urges that the policy must be construed in her favor. The Court of Appeals agreed that the "Limit of Liability" was just that—a limit on the amounts the insurer agreed to pay—but did not eliminate diminution of value. The Court of Appeals focused on the term "like kind and quality," and concluded that Meridian's promise "to repair or replace the property with other property of like kind and quality" could be read to include restoration of "appearance, function, *and* value." Allgood, 807 N.E.2d at 136 (italics in original). Judge Hoffman dissented, reasoning "[i]t is clear that the 'other property' referred to consists of either repair parts or a replacement vehicle of the like kind and quality, not to the provision of money to cover losses in the market value." Id. at 139 (Hoffman, J. dissenting).

We agree with Judge Hoffman that the "Limit of Liability" is unambiguous and bars Allgood's claim for diminished value. Meridian has promised to repair the vehicle or to replace it with property of like kind and quality, but there is no promise to restore the value of the vehicle. Merriam Webster's Collegiate Dictionary 991 (10th ed. 1993), defines "repair" as "to restore by replacing a part or putting together what is torn or broken; to restore to a sound or healthy state." By this definition, and the common understanding of the term, repair means to restore something to its former condition, not necessarily to its former value. See Pritchett v. State Farm Mut. Auto. Ins. Co., 834 So. 2d 785, 791-92 (Ala. Civ. App. 2002); Siegle v. Progressive Consumer Ins. Co., 819 So. 2d 732, 736 (Fla. 2002) (repair means to restore); Hall v. Acadia Ins. Co., 801 A.2d 993, 995 (Me. 2002); Lupo v. Shelter Mut. Ins. Co., 70 S.W.3d 16, 22 (Mo. Ct. App. 2002) ("To interpret this phrase as encompassing the diminished value of an automobile would go beyond the phrase's common prevailing meaning of which an ordinary insured would reasonably understand the phrase to mean."); Schaefer, 124 S.W.3d at 159 (the term "repair" connotes something tangible, not value); Wildin v. Am. Family Mut. Ins. Co., 638 N.W.2d 87, 90 (Wis. Ct. App. 2001).

We believe this contract makes clear that "like kind and quality" refers to "replace," not "repair" which encompasses the notion of restoring property to its former condition. Only to the extent parts are replaced does a "repair" entail "property of like kind or quality." To say one

5

would repair an item with goods of like kind or quality is simply not correct English. An item of property (or a part of that item) is "replaced" with other property, but it is "repaired" with tools and labor. We therefore conclude that "like kind and quality" unambiguously refers only to replacement, not to repairs, and the verb "restore" appears nowhere in the policy. Similarly, ordinary English usage rebuts Allgood's claim that the policy's promise to provide the "amount necessary to repair or replace the property with other property of like kind and quality" includes an amount for diminution of value. Diminution in value can be compensated, but it cannot be "repaired" or "replaced." Given v. Commerce Ins. Co., 796 N.E.2d 1275, 1280 (Mass. 2003) ("damage caused by stigma, a form of damage that, by definition, defies remedy by way of 'repair' or 'replacement'").

Finally, if the policy provided for compensation for diminution in value in addition to repair and replacement, the quoted language in the Limit of Liability provision would be meaningless. The policy provides that the insurer may choose to pay either the actual cash value of the vehicle or the amount necessary to repair, not some combination of the two. If the latter were the case, as the Supreme Court of Texas explained, "The insurer's obligation to compensate the loss would be cumulative—repair or replace *and* pay diminished value—in effect insuring the vehicles 'actual cash value' in every instance and undermining the insurer's right under the policy to choose a course of action." Schaefer, 124 S.W.3d at 159 (emphasis in original); see also Pritchett, 834 So. 2d at 791, 792; Siegle, 819 So .2d at 739; Lupo, 70 S.W.3d at 23 ("To hold Shelter liable for the automobile's diminished value would make it an insurer of the automobile's cash value in all instances and would render meaningless its expressed right under the 'limits of liability' provision to elect to repair or replace rather than to pay the actual cash value of the automobile at the time of the loss.").

We note that some jurisdictions have reached the opposite conclusion as to similar policy provisions.[2] However, we do not think that a split of authority on the meaning of similar contract terms necessarily means that these terms are ambiguous. Ambiguity will be found only if reasonable persons would differ as to the meaning and is not established simply because contro-

---

[2] See, e.g., MFA Ins. Co. v. Citizens Nat'l Bank, 545 S.W.2d 70, 71 (Ark. 1976); Hyden v. Farmers Ins. Exch., 20 P.3d 1222, 1225 (Colo. Ct. App. 2000); State Farm Mut. Auto. Ins. Co. v. Mabry, 556 S.E.2d 114, 120-21 (Ga. 2001); Venable v. Import Volkswagen, Inc., 519 P.2d 667, 673 (Kan. 1974).

6

versy exists. <u>Beam v. Wausau Ins. Co.</u>, 765 N.E.2d 524, 528 (Ind. 2002). A disagreement among courts as to the meaning of a particular contractual provision is evidence that an ambiguity may exist. <u>Travelers Indem. Co. v. Summit Corp. of Am.</u>, 715 N.E.2d 926, 936 (Ind. Ct. App. 1999). But a division of authority is only evidence of ambiguity. It does not establish conclusively that a particular clause is ambiguous, and we are not obliged to agree that those courts that have reached different results have read the policy correctly. <u>Hartford Accident & Indem. Co. v. Dana Corp.</u>, 690 N.E.2d 285, 295 (Ind. Ct. App. 1997), <u>trans. denied</u>. We think the meaning of the contractual terms at issue in Meridian's automobile policy is clear and we therefore find no ambiguity.

## Conclusion

The trial court's grant of Meridian's motion to dismiss and its denial of Allgood's motion for partial summary judgment are affirmed.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ. concur.