**STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPANY,
Appellant–Defendant,**

**v.**

**D.L.B, a minor child by his parent
and natural guardian Deana H.
BRAKE, Appellee–Plaintiff.**

No. 89A05–0512–CV–747.

Court of Appeals of Indiana.

March 12, 2007.

Mark D. Gerth, Kightlinger & Gray, LLP, Indianapolis, IN, Attorney for Appellant.

David W. Craig, Scott A. Faultless, Craig Kelley & Faultless, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellants–Defendants, State Farm Mut. Auto. Ins. Co. (State Farm), appeals the trial court's grant of Summary Judgment in favor of Appellee–Plaintiff, D.L.B., a minor child by his parent and natural guardian, Deana H. Brake, finding that D.L.B. was entitled to judgment as a matter of law because D.L.B.'s negligent infliction of emotional distress claim, which arose from witnessing his cousin Seth Baker's (Seth) deadly injuries, is subject to the "each person" limit of liability, separate and distinct from the "each person" limit of liability paid to Seth's parents.[1]

We reverse and remand for further proceedings.

*ISSUE*

State Farm raises two issues on appeal which we consolidate and restate as the following single issue: Whether State Farm's policy confines D.L.B.'s negligent infliction of emotional distress claim to a single "each person" limit of liability, which is not independent and separate from the "each person" limit of liability paid to Seth's parents.

*FACTS AND PROCEDURAL HISTORY*

Seth, six years old, and D.L.B., four years old, were cousins. They lived in the same apartment complex in Richmond, Indiana and played together almost daily, had sleep-overs, and spent a considerable amount of time together. On July 8, 2000, at approximately 10:07 a.m., the boys were riding their bicycles on South 16th Street. When Seth, riding first, attempted to cross 16th Street he was struck by a vehicle driven by Herbert Wallace (Wallace). Later that day, Seth died due to the brain injuries sustained by the impact of Wallace's car. D.L.B., who witnessed the accident, was not injured in the collision. As a result of witnessing Seth's fatal injuries,

1. We held oral argument in this case on October 24, 2006. We thank counsel for their excellent presentations.

D.L.B. was diagnosed with Post Traumatic Stress Disorder, which is characterized by depression, anxiety, and flashbacks. He experienced physical manifestations of his emotional distress, including significant weight gain to look like his cousin, nightmares, sleeplessness, and anger outbursts.

At the time of the accident, Wallace maintained automobile insurance coverage through a policy issued by State Farm, which included bodily injury coverage in the amount of $100,000 for "each person" and $300,000 for "each accident." (Appellant's App. p. 9). State Farm paid Seth's parents $100,000 in settlement of their claims arising out of their son's death. Subsequently, Deana Brake, D.L.B.'s mother, made a claim against State Farm on D.L.B.'s behalf which was denied by the insurance company. State Farm's policy provides in relevant part:

**Bodily Injury**—means *bodily* injury to a person and sickness, disease or death which results from it.

**Limits of Liability**

The amount of bodily injury liability coverage is shown on the declarations page under "Limits of Liability—Coverage A—Bodily injury, Each Person, Each Accident." Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person*. "*Bodily injury* to one *person*" includes all injury and damages to others resulting from this *bodily injury*. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person," for all damages due to *bodily injury* to two or more *persons* in the same accident.

(Appellants' App. pp. 29 and 32, emphasis original).

On September 7, 2001, D.L.B. filed a Complaint against State Farm seeking damages for negligent infliction of emotional distress. On December 26, 2002, State Farm filed its Motion for Summary Judgment alleging that pursuant to the language of the policy, D.L.B's claim did not constitute bodily injury and that the policy limits were exhausted due to State Farm's payment of $100,000 to Seth's parents under the "each person" clause. In response, on March 11, 2003, D.L.B. filed a Cross Motion for Summary Judgment arguing that his emotional distress claim with resulting physical manifestations constitutes bodily injury under the policy and a separate "each person" limit of liability is available to his claim.

On August 10, 2004, the trial court entered summary judgment in favor of D.L.B. and against State Farm, finding:

1. Each party agrees that the facts involved regarding the July 8, 2000 automobile accident are not in dispute and the issue presently before the court should be resolved by way of Entry of Summary Judgment in favor of one of the parties herein.

2. In this case there was one motor vehicle accident wherein two persons suffered bodily injury or death; [Seth] died and [D.L.B.] sustained a bodily injury.

3. Under *Groves v. Taylor*, 729 N.E.2d 569 (Ind.2000) [D.L.B.] has a distinct, independent, and separate cause of action in these proceedings.

4. [D.L.B.'s] bodily injury claim has an "each person" limit of liability that is separate and distinct from the limit of liability [ ] paid to the parents of [Seth].

(Appellant's App. p. 1). Accordingly, the trial court entered judgment for D.L.B. concluding that State Farm's insurance policy provides coverage for D.L.B.'s injuries.

State Farm now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

State Farm contends that the trial court erred in granting summary judgment to D.L.B. Specifically, State Farm maintains that D.L.B.'s emotional distress claim does not constitute bodily injury within the meaning of the policy because his claim is based upon witnessing Seth's accident and resulting fatal injuries and does not arise out of any bodily contact D.L.B. himself experienced in the accident. Secondarily, State Farm asserts that the available coverage under the policy is exhausted, as the total $100,000 for "each person" was paid in settlement of Seth's wrongful death claim.

### I. Standard of Review

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *AutoXchange.com, Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 47 (Ind.Ct.App.2004). Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *See Ayres v. Indian Heights Volunteer Fire Dep't, Inc.*, 493 N.E.2d 1229, 1234 (Ind.1986).

We observe that in the present case, the trial court entered findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com*, 816 N.E.2d at 48. However, such findings offer this court valuable insight into the trial court's rationale for its judgment and facilitate appellate review. *Id.*

An insurance policy is a contract and, as such, is subject to the same rules of construction as other contracts. *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 251 (Ind.2005). Interpretation of a contract is a pure question of law and is reviewed *de novo. Id.* If its terms are clear and unambiguous, courts must give those terms their clear and ordinary meaning. *Id.* When interpreting an insurance contract courts must look at the contract as a whole, and harmonize its provisions rather than place them in conflict. *Id.* at 252.

### II. Analysis of D.L.B.'s Claim

State Farm's main argument focuses on the interpretation of "bodily injury" as defined in its insurance policy. The insurance company argues that because D.L.B.'s claim for emotional distress arose from witnessing the injury and death of his cousin and not from any bodily contact, the claim is not included within the insurance policy's coverage.

Since State Farm appealed the trial court's Order, this court has decided two pivotal cases which analyze the precise issue before us today. In *State Farm Mut. Auto. Ins. Co. v. Jakupko*, 856 N.E.2d 778, 783 (Ind.Ct.App.2006), this court was presented with an issue of first impression as to whether emotional distress accompanied by physical manifestations of that distress constitutes bodily injury under an insurance policy. In *Ja-*

*kupko*, father, mother, and two sons were involved in a vehicle collision, resulting in bodily injuries, with father sustaining injuries resulting in quadriplegia and permanent mental deficits. *Id.* at 780. After witnessing father's injuries, mother and both sons suffered emotional distress and experienced physical manifestations of their emotional trauma, including uncontrollable crying, loss of appetite, sleeplessness, diminished concentration, and fatigue. *Id.* Seeking additional compensation under the underinsured motorist provisions of their automobile policy, the *Jakupko's* asserted that they were each entitled to "each person" compensation for their claims of negligent infliction of emotional distress. *Id.* Here, the Jakupkos' policy defined "bodily injury" as "bodily injury to a person and sickness, disease or death which results from it." *Id.*

Interpreting the policy's term of "bodily injury," we looked to other jurisdictions for guidance. A review of our sister states' case law revealed that a majority of courts hold that allegations of physically-manifested emotional distress fall within bodily injury coverage in the insurance context. *Id.* at 784. Accepting the majority's view, we likewise held that the Jakupkos claims of emotional distress accompanied by physical manifestations of that distress fell within the bodily injury definition of their policy. *Id.*

However, our analysis did not end there. Contending that the Jakupkos emotional injuries resulted from their father's injuries and did not arise from their own injuries received in the accident, the insurance company claimed the three sets of injuries were limited to the policy's "each person" single cap. *Id.* at 785. Noting Indiana's longstanding characterization of a claim for negligent infliction of emotional distress as an independent tort and the Jakupkos' direct involvement in the collision, we approvingly referred to the Iowa Supreme Court describing the direct causation between an accident and a bystander's emotional distress claim, and stating that "the injury is *directly to the bystander* as a result of the bystander seeing the accident and *reasonably believing* that the direct victim of the accident would be seriously injured or killed." *Id.* (quoting *Pekin Ins. Co. v. Hugh,* 501 N.W.2d 508, 511 (Iowa 1993) (emphasis original)). Accordingly, we held that the Jakupkos' emotional distress claims did not result from father's injuries but from their own personal direct involvement in the accident.[2] *Id.* In light of the policy's coverage limitations, we determined that because the Jakupkos sustained separate bodily injuries, their claims for emotional distress are not confined to the single cap applicable to father's injuries, but rather we decided the Jakupkos were "two or more persons [who sustained bodily injury] in the same accident" and thus fell under the "each accident" coverage of the policy. *Id.* at 786.

Here, the designated evidence reflects that at the time of the accident, D.L.B. was four years old and had a close relationship with his older cousin, Seth. While the boys were riding their bikes, D.L.B. witnessed his cousin being hit by a car. As a result of the vehicle's impact, Seth

---

**2.** In so holding, the *Jakupko* court expressly disagreed with the United States court of appeals for the Seventh Circuit in *Allstate Ins. Co. v. Tozer,* 392 F.3d 950 (7th Cir.2004), which involved similar facts and policy provisions. The *Tozer* court concluded that since the plaintiffs' emotional distress claims were for damages sustained "as a result of" their brother's injuries, their claims were subject to a single cap. Here, we again find it noteworthy to expressly decline to follow the Seventh Circuit as we conclude that *Jakupko* reaches the better result.

laid in the street with his brain exposed. He died later that same day as a result of brain injuries sustained in the collision. D.L.B. was not hurt in the accident. After Seth's untimely death, D.L.B. experienced emotional trauma. The record reflects that D.L.B. was diagnosed with Post Traumatic Stress Disorder, which is a "psychological reaction that occurs after experiencing a highly stressing event outside the range of normal human experience." (Appellee's App. p. 1). As a result of the disorder, he exhibits physical manifestations which include significant weight gain to look like his cousin, nightmares, and fear of going upstairs at home. He has problems sleeping in a room by himself. Besides feeling guilty for being alive, D.L.B. also experiences occasional anger outbursts, and has had "suicidal thoughts after the accident, including standing at the location of the accident scene waiting for a car to strike him." (Appellee's App. p. 2).

D.L.B. presents us with a clear *Jakupko* situation. Here, the policy at issue includes the identical definition of bodily injury as in *Jakupko:* "bodily injury to a person and sickness, disease or death which results from it." [3] (Appellant's App. p. 29) Likewise, as in *Jakupko,* we find that D.L.B.'s physical manifestations of his emotional distress constitute a "bodily injury" to D.L.B. under the provision of State Farm's policy. *See, e.g., Elliott v. Allstate Ins. Co.,* 859 N.E.2d 696, (Ind.Ct. App., 2007) (finding that diminished concentration and sleep deprivation are sufficient physical manifestations of emotional distress to be encompassed within the definition of bodily injury); *State Farm Fire & Cas. Co. v. Westchester Inv. Co.,* 721 F.Supp. 1165, 1167 (C.D.Cal.1989) (finding

that dry throat, rise in body temperature, and knot in stomach are sufficient physical manifestations of emotional distress to constitute bodily injury); *Trinh v. Allstate Ins. Co.,* 109 Wash.App. 927, 37 P.3d 1259, 1264 (2002) (holding that bodily injury includes emotional distress where it is accompanied by physical manifestations such as weight loss, sleep loss, headaches, stomach pains, and muscle aches).

■ Furthermore, D.L.B.'s claim for emotional distress did not result from his cousin's injuries but rather from his own "direct involvement" in the accident. *See Jakupko,* 856 N.E.2d at 785 (quoting *Pekin Ins. Co. v. Hugh,* 501 N.W.2d 508, 511 (Iowa 1993)). A claimant's direct involvement in the accident requires that a negligent infliction of emotional distress claim accompanied by physical manifestations be treated in the same manner as any other bodily injury claims. *Id.* Here, the injury is directly to D.L.B. as a result of personally witnessing his cousin being hit by a vehicle and laying in the street while fatally injured. He could reasonably believe that Seth was seriously injured or killed. *See id.* Accordingly, his claim is not remote or secondary to Seth's, but independent.

Because D.L.B. sustained a separate bodily injury, his emotional distress claim is not confined to the single "each person" cap applicable to Seth's bodily injury and "damages to others resulting from [Seth's] bodily injury." (Appellant's App. p. 32). Instead, we hold as a matter of law that D.L.B.'s claim constitutes "damages due to two or more persons in the same accident," and therefore falls under the "each accident" coverage. (Appellant's App. p. 32).

---

**3.** State Farm has also unsuccessfully litigated the same policy provision relevant to the same issue in other jurisdictions. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Connolly,* 212 Ariz. 417, 132 P.3d 1197 (2006); *Treichel v. State Farm Mut. Auto. Ins. Co.,* 280 Mont. 443, 930 P.2d 661 (1997); *Crabtree v. State Farm Ins. Co.,* 632 So.2d 736 (La.1994).

Thus, we conclude that the trial court erred when it found that D.L.B.'s claim for negligent infliction of emotional distress is subject to a separate "each person" coverage of State Farm's policy.

## CONCLUSION

Based on the foregoing, we hold that the definition of bodily injury in State Farm's policy includes negligent infliction of emotional distress when accompanied by physical manifestations of that distress. We also hold that D.L.B.'s injuries were sustained as a result of his direct involvement in the accident. Thus, D.L.B.'s negligent infliction of emotional distress claim is subject only to the "each accident" limit of liability.

Reversed and remanded for further proceedings.

VAIDIK, J., concurs.

DARDEN, J., dissents with separate opinion.

4. In *Tozer*, three siblings were involved in an automobile accident. One brother sustained severe injuries and died. His siblings sustained minor injuries. The automobile owner had insurance through Allstate Insurance Company ("Allstate"). The insurance policy limited Allstate's liability for bodily injury claims to $100,000 for "each person" and $300,000 for "each accident." The policy defined bodily injury as " 'physical harm to the body, sickness, disease or death.' " 392 F.3d at 953. The policy limited its liability to $100,000 for "each person" and $300,000 for "each accident" and defined those limits as follows:

> The limit stated for each person for bodily injury is our total limit of liability for all damages because of bodily injury sustained by one person, including all damages sustained by anyone else as a result of that bodily injury. Subject to the limit for each person, the limit stated for each accident is our total limit of liability for all damages for bodily injury.

DARDEN, Judge, dissenting.

I would respectfully dissent. I believe that the only issue we must consider is whether State Farm's insurance policy covers the claim asserted on behalf of D.L.B. against Wallace. As such, only the language of State Farm's policy and Indiana law on contract interpretation should govern. Therefore, I find the United States Court of Appeals for the Seventh Circuit's opinion in *Allstate Ins. Co. v. Tozer*, 392 F.3d 950 (7th Cir.2004) particularly instructive.[4]

The *Tozer* court determined that under Indiana law, "the question of whether the siblings' claims fall under the 'each person' limit of liability . . . is an issue of contract interpretation," and therefore looked to the "terms of the policy to ascertain the scope of its coverage." *Id.* at 953. Upon review of the policy's terms, the *Tozer* court found that

> the siblings' claims do not amount to separate "bodily injuries" under the policy. A reasonable interpretation of the policy's definition of bodily injury—

*Id.* (emphasis omitted).

Allstate paid the brother's estate $100,000 under the insurance policy. The siblings then filed a complaint, seeking damages for emotion distress caused by seeing their brother's injuries and death. Allstate filed suit in the United States District Court for the Southern District of Indiana, seeking a declaration that the siblings' claims were subject to the $100,000 "each person" limit of liability applicable to their brother's injuries and that it had exhausted its liability by paying his estate $100,000. The district court "interpreted the policy's definition of bodily injury to include a claim for emotional distress so long as the plaintiff sustained a physical impact at the time of the event triggering the claim, even if that impact did not cause the emotional distress." 392 F.3d at 951. Accordingly, the district court held that each sibling had a separate bodily injury claim under the policy. Allstate appealed.

"physical harm to the body, sickness, disease, or death"—does not include emotional distress, at least where, as here, the distress is not caused by physical trauma.

*Id.* The *Tozer* court continued:

Seeking to avoid this result, defendants point to cases from other jurisdictions holding that emotional distress qualifies as a separate bodily injury under policies similar to the one at issue in this case.... These cases frame the issue as whether the underlying tort—negligent infliction of emotional distress—is an independent or derivative cause of action.[ ] Because negligent infliction of emotional distress is an independent tort in those jurisdictions, that line of authority reasons that a claim of emotional distress also constitutes a separate "bodily injury" under the terms of an insurance policy.... Defendants assert that the Indiana Supreme Court would follow this line of reasoning and, given that negligent infliction of emotional distress is an independent tort in Indiana ... hold that the siblings' claims are separate bodily injuries under the policy....

We disagree.... [A]ccepting the approach advocated by defendants would require us to ignore the settled principle of Indiana law that the construction of an insurance policy is a matter of contract interpretation.

... [T]he characterization of a claim as derivative or independent is irrelevant to whether the claim qualifies as a separate bodily injury under an insurance policy.

\* \* \*

... [T]he extent of an insurer's liability is a matter of contract interpretation governed by the terms of the policy. *Id.* at 954–55 (internal citations and footnote omitted).

In this case, State Farm's policy defines "bodily injury" as a "bodily injury to a *person* and sickness, disease or death which results from it." (App.29). "Bodily injury" means "[p]hysical damage to a person's body." BLACK'S LAW DICTIONARY 801 (8th ed.2004). "Bodily" means "of or relating to the body[.]" Merriam–Webster Dictionary at *http://www.m-w.com/dictionary/bodily* (August 22, 2006). Injury means "hurt, damage, or loss sustained[.]" *Id.* Given these definitions, I agree with *Armstrong v. Federated Mut. Ins. Co.*, 785 N.E.2d 284 (Ind.Ct.App.2003), *trans. denied,* which found that "the phrase 'bodily injury' connotes physical damage to the body such as would result from an impact upon the body by a physical force." 785 N.E.2d at 292. Thus, a person who has suffered a direct physical impact to his or her body may recover under State Farm's policy. I do not find that D.L.B. suffered an impact upon his body.

I next question whether a person is entitled to recovery for sickness, disease or death, without an accompanying bodily injury, under State Farm's policy. Again, State Farm's policy provides coverage for "bodily injury to a *person* and sickness, disease or death which results from it." (App.29). The word "and" is conjunctive. Thus, pursuant to the policy, to recover under State Farm's policy for sickness, disease or death, a person must also have had a bodily injury, from which the sickness, disease or death arose. This is consistent with other cases where this court, in interpreting other insurance policies, has held that "the term 'bodily injury' does not include emotional damage that does not arise from a bodily touching." *Wayne Township Bd. of Sch. Comm'rs v. Indiana Ins. Co.*, 650 N.E.2d 1205, 1210 (Ind.Ct. App.1995), *trans. denied; see also Armstrong*, 785 N.E.2d at 293 (stating that even if loss of love and companionship

were considered a bodily injury, the plaintiffs could not recover under insurance policy because they "suffered no physical impact"). Accordingly, I find that under the language of State Farm's policy, liability coverage for *bodily* injury is not available to D.L.B. as he suffered no physical impact or touching to his body.

Although he did not suffer a direct impact to his body, D.L.B. argues that his claim constitutes a bodily injury entitled to coverage because his emotional distress was accompanied by physical manifestations. I disagree.

The physical manifestations are a result of D.L.B.'s emotional distress. They are not a result of an impact, force or harm to D.L.B.'s body. Therefore, I cannot say they constitute bodily injury.

Furthermore, even if the emotional distress, resulting in physical manifestations, constituted a bodily injury, it is clear that D.L.B. only suffered such bodily injury as a result of witnessing Seth's bodily injury. State Farm limits its liability as follows: "Under 'Each Person' is the amount of coverage for all damages due to *bodily injury* to one *person*. 'Bodily injury' to one *person*' includes all injury and damages to others *resulting from this bodily injury.*" (App.32) (emphases in original and added). Clearly, D.L.B.'s damages resulted from Seth's bodily injury, and his claim therefore is subject to the $100,000 limit applicable to Seth's injuries. Because State Farm has paid $100,000 for all injuries and damages resulting from Seth's injuries, I find that State Farm's liability for additional claims resulting from Seth's injuries, including D.L.B.'s claim, has been exhausted.

Finally, even assuming that D.L.B.'s emotional distress constituted a bodily in-

jury, I assert that D.L.B. cannot be subject to the liability limit of $300,000 for "Each Accident" under State Farm's policy. The policy provides that "[u]nder 'Each Accident' is the total amount of coverage, subject to the amount shown under 'Each Person', for all damages due to *bodily injury* to two or more *persons in the same accident.*" (App.32) (emphases in original and added). Subject to the limits imposed by the "Each Person" provision of the policy, the "Each Accident" provision limits State Farm's total liability for all damages due to bodily injury to $300,000. The "Each Accident" allowance, however, is available only to persons "*in the same accident.*" (App.32) (emphasis added). In this case, D.L.B. witnessed the accident between Wallace and Seth. D.L.B., as a bystander, was not *in* the accident. Therefore, I find that coverage under the limits for "Each Accident" is not available to D.L.B.[5]

---

**5.** Of course, my opinion does not imply that emotional distress to a person, which arises from that person's bodily harm or injury, is not covered by State Farm's policy. Further-

more, it does not imply that D.L.B. does not have a claim for negligent infliction of emotional distress against Wallace under *Groves v. Taylor,* 729 N.E.2d 569 (Ind.2000).